# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANNAH COUSIN, et al., *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>SHARP HEALTHCARE,<br><br>Defendant. | Case No.: 22-cv-2040-MMA-DDL<br><br>Member Case Nos: 23-cv-033-MMA-DDL<br>23-cv-330-MMA-DDL<br><br>**ORDER DISMISSING AND REMANDING CASES FOR LACK OF SUBJECT MATTER JURISDICTION** |

On March 6, 2024, the parties appeared before the Court for a hearing on the Court's Order to Show Cause ("OSC"), at which time the Court took the matter under submission. Doc. No. 64. Upon due consideration of the parties' written responses to the OSC and arguments at the hearing, and for the reasons set forth below, the Court **REMANDS** the Cousin and Camus Actions and **DISMISSES** the Barbat Action.

## I. Background

Plaintiffs Hannah Cousin, Linda Camus, and Edward Barbat bring this consolidated putative class action against Sharp Healthcare ("Sharp"). *See* Doc. No. 23. This consolidated case is comprised of three individual actions: *Cousin v. Sharp Healthcare*, 22-cv-2040-MMA-DDL, originally filed in state court, Cal. Sup. Ct. Case

No. 37-2022-00047290-CU-MC-CTL ("Cousin Action"); *Camus v. Sharp Healthcare*, 23-cv-0033-MMA-DDL, originally filed in state court, Cal. Sup. Ct. Case No. 37-2022-00048546-CU-NP-CTL ("Camus Action"); and *Barbat v. Sharp Healthcare*, 23-cv-330-MMA-DDL ("Barbat Action"). Generally speaking, these cases challenge Sharp's use of an internet tracking tool, Meta Pixel, on its publicly facing website.

In Sharp's Notices of Removal of the Cousin and Camus Actions, Sharp asserted that its removal of both cases was proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *See* Doc. No. 1 ¶ 9 Camus Action, Doc. No. 1 ¶ 9. Plaintiff Barbat similarly alleged in his initial Complaint that the Court has subject matter jurisdiction pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Barbat Action, Doc. No. 1 ¶ 7.

On March 3, 2023, Plaintiffs filed a Consolidated Class Action Complaint against Sharp. Doc. No. 14. For the first time, Plaintiffs referenced the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)(A) ("CAFA"), asserting that federal subject matter jurisdiction lies because there are more than 100 members of the proposed class, at least one member of which is diverse, and they seek in excess of $5,000,000.00. *Id.* ¶ 16. Thereafter, Plaintiffs filed a First Amended Consolidated Class Action Complaint. Doc. No. 23. Plaintiffs again invoked the Court's subject matter jurisdiction under CAFA. *Id.* ¶ 15.

On February 2, 2024, the Court ordered the parties to show cause why these cases should not be dismissed or remanded for lack of subject matter jurisdiction. *See* Doc. No. 59. The Court incorporates its OSC by reference here.

## II. REQUEST FOR JUDICIAL NOTICE

In support of its response to the OSC, Sharp asks the Court to take judicial notice of four exhibits: (A) Executive Order 13,335—Incentives for the Use of Health Information Technology and Establishing the Position of the National Health Information Technology Coordinator, dated April 27, 2004; (B) the Office of the National Coordinator's 2011-2015 Federal Health Information Technology Strategic Plan; (C) the

Office of the National Coordinator's 2015-2020 Federal Health Information Technology Strategic Plan; and (D) the Office of the National Coordinator's 2020-2025 Federal Health Information Technology Strategic Plan.  Doc. Nos. 62-3 and 62-4.

Pursuant to Rule 201 of the Federal Rules of Evidence, courts may judicially notice an adjudicative fact if it is not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)).

Here, all four exhibits can be found on government website pages, which are proper for judicial notice so long as "neither party disputes the authenticity of the [website] or the accuracy of the information displayed therein." *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).  Plaintiffs have not opposed or otherwise responded to Sharp's request, and therefore the Court finds that the accuracy of the information in these exhibits is not in dispute.  Accordingly, as discussed at the OSC hearing, the Court **GRANTS** Sharp's request for judicial notice.

### III. LEGAL STANDARD

Federal courts are of limited jurisdiction, *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007), and possess only that power authorized by the Constitution or a statute, *see Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  The Court is constitutionally required to raise issues related to federal subject matter jurisdiction, and may do so sua sponte.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998); *see also Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).  Removal jurisdiction is governed by 28 U.S.C. § 1441, *et seq.*  Relevant here, the federal officer removal statute, 28 U.S.C. § 1442, allows for the removal of "[a] civil action or criminal prosecution" against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof."  28 U.S.C. § 1442(a)(1).

# IV. Discussion

Sharp removed the Cousin and Camus Actions pursuant to the federal officer removal statute, and Plaintiff Barbat similarly relied on this statute when he initiated his individual action. Additionally, Plaintiffs assert in their two Consolidated Complaints that the Court has subject matter jurisdiction pursuant to CAFA. As set forth below, neither statute provides the Court with subject matter jurisdiction over this consolidated case or these three individual actions.

## A. Federal Officer Removal

"A party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims, and (c) it can assert a 'colorable federal defense.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (citing *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)). Here, there seems to be no dispute that Sharp is a "person" as defined by the statute. *See Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) ("The courts of appeals have uniformly held that corporations are 'person[s]' under § 1442(a)(1).") (collecting cases). As to the third requirement, Sharp pleads that it has a colorable federal defense: according to its Answer and Notices of Removal, Sharp asserts that Plaintiffs' claims are barred by Health Insurance Portability and Accountability Act and the Health Information Technology for Economic and Clinical Health Act ("HITECH Act"), both of which are federal statutes. Doc. No. 43 ¶¶ 25, 26; *see also* NOR ¶ 38.

The issue here turns on the second requirement. "To demonstrate a causal nexus, the private person must show: (1) that the person was 'acting under' a federal officer in performing some 'act under color of federal office,' and (2) that such action is causally connected with the plaintiff's claims against it." *Cty. of San Mateo v. Chevron Corp. (San Mateo)*, 32 F.4th 733, 755 (9th Cir. 2022) (citing *Goncalves*, 865 F.3d at 1244–50). The provision "should be 'liberally construed' to fulfill its purpose of allowing federal officials and agents who are being prosecuted in state court for acts taken in their federal

| | |
|---|---|
| 1 | authority to remove the case to federal court." *San Mateo*, 32 F.4th at 756 (quoting |
| 2 | *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007)).  However, "broad language is |
| 3 | not limitless" and "precedent and statutory purpose make clear that the private person's |
| 4 | 'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of |
| 5 | the federal superior." *Watson*, 551 U.S. at 147.  A private person's "compliance (or |
| 6 | noncompliance) with federal laws, rules, and regulations does not by itself fall within the |
| 7 | scope of the statutory phrase 'acting under' a federal official . . . even if the regulation is |
| 8 | highly detailed" and even if the activities are "highly supervised and monitored." *Id.* at |
| 9 | 153. |
| 10 | In the OSC, the Court expressed its doubt as to the propriety of Sharp's reliance on |
| 11 | the federal officer removal statute, namely, whether Sharp satisfies the "acting under" |
| 12 | requirement.  *See* Doc. No. 59 at 4–5.  In determining whether a private person is "acting |
| 13 | under" a federal officer for purposes of § 1442(a)(1), courts consider: (1) "whether the |
| 14 | person is acting on behalf of the officer in a manner akin to an agency relationship," |
| 15 | (2) "whether the person is subject to the officer's close direction, such as acting under the |
| 16 | subjection, guidance, or control of the officer, or in a relationship which is an unusually |
| 17 | close one involving detailed regulation, monitoring, or supervision," (3) "whether the |
| 18 | private person is assisting the federal officer in fulfilling basic governmental tasks that |
| 19 | the Government itself would have had to perform if it had not contracted with a private |
| 20 | firm," and (4) "whether the private person's activity is so closely related to the |
| 21 | government's implementation of its federal duties that the private person faces a |
| 22 | significant risk of state-court prejudice, just as a government employee would in similar |
| 23 | circumstances, and may have difficulty in raising an immunity defense in state court." |
| 24 | *San Mateo*, 32 F.4th at 756–57 (internal quotation marks and citations omitted). |
| 25 | While Sharp pleads in the Notices of Removal that both executive order and |
| 26 | federal legislation are aimed at promoting and establishing infrastructure for the |
| 27 | electronic exchange of health information, *see* Doc. No. 1 ¶¶ 13–16, as noted in the OSC, |
| 28 | every other district court in Ninth Circuit has determined these allegations are |

insufficient. OSC at 4–5. In response to the OSC, Plaintiffs concede that subject matter jurisdiction does not lie under the federal officer removal statute. *See* Doc. No. 61 at 3.

Sharp, however, defends its use of the federal officer removal statute in response to the OSC. *See* Doc. No. 62. According to Sharp, as previously alleged in the Notices of Removal, the Meaningful Use Program, now known as the Promoting Interoperability Program, *see* Doc. No. 62-1 ("Faley Decl.") at 2 fn.1, incentivizes and directs healthcare providers to promote access to medical records online, Doc. No. 62 at 6. Sharp contends that "driving website traffic to the patient portal assists the federal government in carrying out its mission to create a unified system for patient electronic health records and optimize patient access to health information." *Id.* at 7. In short, the Meaningful Use Program, as authorized by the HITECH Act, is an incentive program developed by the Office of the National Coordinator, a division of the Department of Health and Human Services, designed to encourage healthcare providers to "meaningfully use" electronic health record ("EHR") technology. *See* 42 CFR § 495.2.

In the Notices of Removal, Sharp relied on two out-of-circuit cases, which the Court addressed in the OSC, noting that they were unpersuasive in light of the overwhelming in-circuit jurisprudence. *See* OSC at 5. Sharp continues to urge the Court to follow these cases. *See* Doc. No. 62 at 14. These cases, *Doe v. UPMC*, No. 2:20-cv-359, 2020 U.S. Dist. LEXIS 136077 (W.D. Pa. July 31, 2020) and *Doe v. ProMedica Health Sys.*, No. 3:20 CV 1581, 2020 U.S. Dist. LEXIS 244916 (N.D. Ohio Oct. 30, 2020), are not binding or persuasive, nor do they even represent a consistent position within the Third and Sixth Circuits. *See Doe v. Redeemer Health*, No. 23-2405, 2023 U.S. Dist. LEXIS 177399, at *16 (E.D. Pa. Sep. 28, 2023); *Doe v. Christ Hosp.*, No. 1:23-cv-27, 2023 U.S. Dist. LEXIS 129792, at *25 (S.D. Ohio July 26, 2023). Additionally, in responding to the Court's OSC, counsel has recycled its arguments already categorically rejected by every other district court in this circuit. *See Doe v. Wash. Twp. Health Care Dist.*, No. 23-cv-05016-SI, 2023 U.S. Dist. LEXIS 216531, at *10 (N.D. Cal. Dec. 5, 2023); *Gibson v. Stanford Health Care*, No. 23-cv-02320-BLF,

2023 U.S. Dist. LEXIS 201829, at *12 (N.D. Cal. Nov. 9, 2023); *Crouch v. Saint Agnes Med. Ctr.*, No. 1:22-cv-01527-ADA-EPG, 2023 U.S. Dist. LEXIS 189438, at *7 (E.D. Cal. Oct. 20, 2023); *Valladolid v. Mem'l Health Servs.*, No. CV 23-3007-MWF (ASx), 2023 U.S. Dist. LEXIS 111559, at *19 (C.D. Cal. June 27, 2023); *Beltran v. Cedars-Sinai Health Sys.*, No. CV 23-02626 DSF (JPRx), 2023 U.S. Dist. LEXIS 90987, at *7 (C.D. Cal. May 24, 2023); *Davis v. Hoag Mem'l Hosp. Presbyterian*, No. SACV 23-00772-CJC (KESx), 2023 U.S. Dist. LEXIS 81178, at *2 (C.D. Cal. May 8, 2023); *Browne v. Cedars-Sinai Health Sys.*, No. CV 23-01551 DSF (JPRx), 2023 U.S. Dist. LEXIS 73143, at *6 (C.D. Cal. Apr. 26, 2023); *Doe v. Cedars-Sinai Health Sys.*, No. CV 23-870 DSF (JPRx), 2023 U.S. Dist. LEXIS 71443, at *6 (C.D. Cal. Apr. 24, 2023); *Doe v. Torrance Mem'l Med. Ctr.*, No. CV 23-01237 DSF (JPRx), 2023 U.S. Dist. LEXIS 64619, at *6 (C.D. Cal. Apr. 12, 2023); *Heard v. Torrance Mem'l Med. Ctr.*, No. CV 22-09466 DSF (JPRx), 2023 U.S. Dist. LEXIS 42196, at *4 (C.D. Cal. Mar. 13, 2023); *Quinto v. Regents of the Univ. of Cal.*, No. 3:22-cv-04429-JD, 2023 U.S. Dist. LEXIS 17263, at *7 (N.D. Cal. Feb. 1, 2023).

While the Court recognizes these cases are not binding, it nevertheless bears remembering that California Professional Conduct Rule 3.3 "is an important one, especially in the district courts, where its faithful observance by attorneys assures that judges are not the victims of lawyers hiding the legal ball." *Transamerica Leasing, Inc. v. Compania Anonima Venezolana de Navegacion*, 93 F.3d 675, 676 (9th Cir. 1996); *see* Cal. R. Prof. Conduct 3.3(a)(2) (prohibiting a lawyer from failing to disclose "legal authority in the controlling jurisdiction known[ ] to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel").

In any event, the Court sees no reason to deviate from these unanimous district court decisions and therefore the Court similarly finds that the relevant factors are not satisfied here. Mere compliance with federal laws, rules, and regulations is insufficient to invoke federal officer removal. *See Watson*, 551 U.S. at 153 (holding that a "private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not

by itself fall within the scope of the statutory phrase 'acting under' a federal 'official'"); *see also Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 685 (9th Cir. 2022) ("Without more than government regulations and recommendations, [the nursing home] has failed to establish that it was 'acting under' a federal official[.]").  And here, as other courts have recognized, participation in the Meaningful Use Program is voluntary.  *See* Faley Decl. Ex. A at 4; *see also Valladolid*, 2023 U.S. Dist. LEXIS 111559, at *19.  That Sharp has elected to participate in the program, and receives incentive payments as a result, is not dispositive.  Sharp points to the Supreme Court case of *Watson* in support of its position that its receipt of federal funds "satisfies the acting under requirement."  Doc. No. 62 at 12.  But this argument is not supported by *Watson*.

Although the Supreme Court in *Watson* identified a lack of payment from the government as a supporting basis for rejecting federal officer removal, it did so in the middle of a list of other facts also not present: any contract, any employer/employee relationship, or any principal/agent relationship.  551 U.S. at 156.  Here there is similarly no contract and no employer/employee relationship, and Sharp does not argue it acted as the government's agent when it embedded the tracking tool on its website.  There is no reason to believe that if Phillip Morris had received incentive payments from the government to test cigarettes that fact alone would have changed the outcome in *Watson*.  As one court recognized "allowing payment alone to be enough to invoke the federal-officer removal statute would be a slippery slope that would drastically expand the availability of the statute to private defendants."  *Valladolid*, 2023 U.S. Dist. LEXIS 111559, at *21.

Further, because the program is voluntary, Sharp did not "ha[ve] to" raise awareness and increase usability of the patient portals, Faley Decl. ¶ 8; Sharp is under no obligation to undertake any task.  Rather, Sharp's voluntary participation in the Meaningful Use Program when it utilized a tracking tool to drive traffic to its website also advertised its professionals and services.  This clearly demonstrates a mutually beneficial arrangement.  *See City & Cty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1109

(9th Cir. 2022) (explaining that the Ninth Circuit previously rejected reliance on the federal officer removal statute where the defendant was acting independently under an agreement that allowed for the coordination of efforts in a way that would benefit both parties) (citing *San Mateo*, 32 F.4th at 759).

Additionally, as other courts have recognized, there appears to be nothing in the Meaningful Use Program that specifies how providers are to raise awareness and increase usability of the EHR technology. *See Valladolid*, 2023 U.S. Dist. LEXIS 111559, at *22. This is confirmed by Sharp's evidence in support of its position, which reveals a plethora of objectives and goals, but no actual requirements. Even the criteria set forth in the governing regulations provide no instruction on how to accomplish the objectives. *See* 42 CFR § 495.20. Thus, Meaningful Use Program participants are afforded considerable latitude in achieving the program's goals. So even accepting that the federal government offers a "model" for providers to follow and "monitors" their activities through "detailed reports on patient portal activities," *see* Doc. No. 62 at 13, the relationship between Sharp and the federal government under the Meaningful Use Program is not the "unusually close supervision" ordinarily present for a court to find the "acting under" prong satisfied. *Sunoco*, 39 F.4th at 1109 (citation and quotation marks omitted).

Sharp does not, and perhaps cannot in good faith, argue that in embedding Meta Pixel on its website it "arguably . . . performed a job that, in the absence of a contract with a private firm, the Government itself would have to perform." *Watson*, 551 U.S. at 154. Instead, Sharp only goes as far as to say that "the government would have to step in" if not for private entities' efforts and "would be responsible for building this electronic records system itself." Doc. No. 62 at 20. But Sharp does not genuinely suggest that if not for Sharp's efforts, the federal government would have undertaken the task of driving traffic to Sharp's, or other providers', patient portals. And the latter assertion presumes that this case involves the creation, implementation, and/or maintenance of EHR technology. It does not. The stated connection here between the allegations and government direction is Sharp's receipt of financial incentives offered by

the National Coordinator for providers who demonstrate "meaningful use" of EHR technology in an effort to promote engagement under the program. Regardless, the Court is not persuaded that the federal government would have undertaken either task, as they reach deeply into the private sector of healthcare and have never been a basic function of the federal government.

To reiterate, no statute, regulation, or rule requires, under significant federal government direction and oversight, Sharp to do anything, including utilize technology to direct traffic to its website and portal. Sharp's relationship with the government under the Meaningful Use Program is not akin to an agency relationship, Sharp is not subject to an officer's close direction, and Sharp performs no basic governmental task. As the Eighth Circuit explained:

> The line between a party who acts as a government middleman and a party who accepts federal funding for its own business purposes may sometimes be blurry. Wherever the line may lie, BJC clearly sits on the private side. MyBJCHealth or MyChart was not a federal government website, it was not a website BJC operated on the federal government's behalf or for the federal government's benefit, and it was not a website the federal government directed BJC to create or operate. The design of private websites is not—and has never been—a basic governmental task. When BJC created and operated an online portal for its patients, it was not doing the federal government's business. It was doing its own.

*Doe v. BJC Health Sys.*, 89 F.4th 1037, 1045 (8th Cir. 2023). The Third Circuit has similarly concluded that participation in the Meaningful Use Program does not satisfy the "acting under" prong for federal officer removal. *Mohr v. Trs. of the Univ. of Pa.*, 93 F.4th 100, 106 (3d Cir. 2024) ("In reaching this holding, we join at least one of our sister circuits and many district courts that have addressed nearly identical issues."). To the extent Sharp urges the Court not to follow these persuasive authorities merely because the Ninth Circuit may diverge from the emerging position of its sister courts, the Court notes that the Ninth Circuit has already relied on and approvingly cited to Eighth and Third Circuit cases in a similar context. *See Saldana*, 27 F.4th at 685 (first quoting *Buljic*

*v. Tyson Foods, Inc.*, 22 F.4th 730, 740 (8th Cir. 2021); and then citing *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 406 (3d Cir. 2021)).

According to Sharp, the Third and Eighth Circuits misapplied the law "by failing to recognize the distinction between the cigarette manufacturers in *Watson*, who were merely complying with government regulation, and participants in the Meaningful Use Program, who assist the government with creating something new that it needed." Doc. No. 62 at 15 fn7. Sharp conflates a government need with what the government wants. Simply saying that the government needs something does not make it so, and it is not true historically, fundamentally, or traditionally, that the federal government needs to increase private use of medical records such as the new EHR technology. The government may want to achieve the Meaningful Use Program goals, for the variety of reasons identified in Sharp's evidence, but Sharp's attempts to classify this program as a need to accomplish a basic governmental task are unmoving. To that end, Sharp's comparison of the present facts to government contracts for military equipment, *see, e.g.*, *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998), and administration of health benefits to federal employees, *see, e.g.*, *Goncalves*, 865 F.3d at 1247, merits no substantive response. It suffices to say that manufacturing weapons of war and administering health benefits to federal employees are facially traditional or basic governmental tasks or duties and are inapposite to the desire by the government to increase private utilization of EHR technology.

Sharp also asserts that the Third and Eighth Circuits incorrectly drew from *Watson* that "the acting under element was not met because there was no evidence of any delegation of authority from the FTC. . . . *Watson* sets forth no such strict 'delegation' requirement." Doc. No. 62 at 15 fn7. This is a red herring. Sharp is not the federal government, a federal agency, or a federal officer. Sharp nonetheless seeks the cloak of the federal government to litigate in federal rather than state court. To do so, as *Watson* amply explains, Sharp must demonstrate that it was endeavoring to assist or help carry out the duties or basic governmental tasks of a federal superior. *Watson*, 551 U.S. at

152–153. The duties or tasks, therefore, must belong to the government in the first instance and yet, for federal officer removal by a non-governmental entity, the removing party must have some responsibility for them. Thus, under the plain English definition of the verb "delegate," the Court agrees that only if those duties or basic governmental tasks—or perhaps, the efforts necessary to satisfy those duties and tasks—are "entrust[ed] to another," can it be said that the requisite nexus is satisfied for federal officer removal. Webster's Third New International Dictionary 596 (1971) (defining "delegate"); *see also* Webster's New World Dictionary, Second College Edition 373 (1980) (defining "delegate" as "to entrust (authority, power, etc.) to a person acting as one's agent or representative"). In that sense, the Court agrees with the courts that have required some form of delegation by the government to an outside entity for the purpose of demonstrating the "acting under" condition for federal officer removal.

      In any event, here, increasing use of EHR technology is neither a duty of the federal government nor a basic government task. And while receiving incentive payments to drive internet traffic to its own website may "help" or "assist" the federal government "in some sense of those words," it is not in the statutory or historical sense. *Watson*, 551 U.S. at 152. So setting aside whether express or implicit delegation of a government duty, task, or even the means necessary to achieve those ends, is required, and whatever definition Sharp assigns to the word "delegation," Sharp plainly has not demonstrated that it was acting in the necessary capacity, "under" the federal government, in an effort to assist a federal officer or agency with fulfilling a task that, in the absence of such outside assistance, the federal government would have to perform itself.

      Further, to the extent Sharp argues that delegation is not required, its position is seemingly foreclosed by Ninth Circuit precedent. In *Watson*, Phillip Morris argued that it was "acting under" officers of the FTC because the FTC had delegated its authority to test cigarettes for tar and nicotine. *Id.* at 156. The Supreme Court rejected the argument based upon a lack of evidence of any such delegation. *Id.* (". . .we have found no

evidence of any delegation of legal authority from the FTC to the industry association to undertake testing on the Government agency's behalf."). The Supreme Court then immediately listed other things not evidenced. *Id.* The delegation requirement issue therefore appears to hinge on the Supreme Court's use of the word "nor" in *Watson*:

> Although Philip Morris uses the word "delegation" or variations many times throughout its brief, we have found no evidence of any delegation of legal authority from the FTC to the industry association to undertake testing on the Government agency's behalf. **Nor** is there evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement.

*Id.* (emphasis added).

In *Fidelitad, Inc. v. Insitu, Inc.*, the Ninth Circuit read "nor" to mean "including" and interpreted *Watson*'s discussion of delegation as "dispositive"; the Ninth Circuit cited to *Watson* and provided the explanatory parenthetical: "finding the absence of a 'formal delegation' of authority dispositive, including 'any contract, any payment, any employer/employee relationship, or any principal/agent arrangement.'" 904 F.3d 1095, 1100 (9th Cir. 2018) (emphasis added) (quoting *Watson*, 551 U.S. at 156). This would seem to end the debate. In any event, even assuming delegation is not required, the Court agrees with the other courts that have found that payment alone is not dispositive.

As the Ninth Circuit has explained: "It cannot be that the federal government's mere designation of an industry as important—or even critical—is sufficient to federalize an entity's operations and confer federal jurisdiction." *Saldana*, 27 F.4th at 685 (quoting *Buljic*, 22 F.4th at 740) (internal quotation marks omitted). As critical or important as the Meaningful Use Program may be, just as the federal government does not, as a "basic governmental task," *Watson*, 551 U.S. at 153, run nursing homes, it does not promote access to private healthcare providers' services and EHR technology.

Finally, the Court is not convinced that Sharp would face prejudice in state court. There is no reason to believe the State of California is necessarily hostile to the federal

government or that that state court proceedings might reflect prejudice against the relevant laws or would deprive Sharp of a forum in which to assert federal immunity defenses. *See id.* at 150.

At bottom, as many other courts have recognized, subjecting oneself to regulations, supervision, monitoring, and even receiving incentive payments under the Meaningful Use Program is not sufficient to invoke the federal officer removal statute. Sharp is not helping the government produce something it needs, nor has it been entrusted with any authority to do something on the government's behalf. Sharp receives incentive payments to act in a mutually beneficial way, and has chosen to do so by allegedly embedding Meta Pixel on its website. This is insufficient to "federalize" Sharp's operations. *Saldana*, 27 F.4th at 685. As with all of the other courts to consider counsel's arguments, the Court finds that none of the "acting under" factors support Sharp's removal. Accordingly, because Sharp improperly invoked the federal officer removal statute, the Court lacks subject matter jurisdiction over this case on that basis.

**B.     Class Action Fairness Act**

Plaintiffs allege in their Consolidated Complaints that this Court has subject matter jurisdiction under CAFA. CAFA jurisdiction requires that the case be a putative class action involving: (1) minimal diversity, or in other words, that any member of the class is a citizen of a state different from any defendant; (2) at least 100 putative members; and (3) over $5,000,000 in controversy exclusive of interest and costs. 28 U.S.C. § 1332(d)(2), (d)(5)(B). However, the statute also delineates exceptions to CAFA jurisdiction, which provide that courts may decline jurisdiction, 28 U.S.C. § 1332(d)(3), and in some instances must decline to exercise jurisdiction, *id.* § 1332(d)(4), based upon the diversity of the proposed class, *see King v. Great American Chicken Corp., Inc.*, 903 F.3d 875, 878 (9th Cir. 2018) ("The statute includes a number of exceptions that require a federal district court to decline jurisdiction even if the above requirements were met."). The purpose is "to allow truly *intra*state class actions to be heard in state court." *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020) (emphasis in original).

1 As the Court explained in the OSC, the named parties here are not diverse:
2 Plaintiffs and Sharp are citizens of California. *See* Doc. No. 23 ¶¶ 10–14. Further,
3 Plaintiffs' proposed class appears to be limited to California residents, *see* Doc. No. 23
4 ¶ 140, and Plaintiffs only press claims under California law. Plaintiffs suggest that their
5 proposed class definition of "All natural persons in California" is not so limited and does
6 not translate to only California residents. Doc. No. 61 at 4. Even assuming that is true,
7 Plaintiffs no longer press this Court's original jurisdiction under CAFA. *See* Doc. No. 61
8 at 4.

9 Under the home state controversy exception, "[a] district court shall decline to
10 exercise jurisdiction under [§ 1332(d)(2) where] two-thirds or more of the members of all
11 proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the
12 State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). According to
13 Plaintiffs, the parties have abandoned their efforts of demonstrating that one-third of the
14 proposed class are non-California residents. *Id.* Accordingly, even accepting that the
15 Court has original jurisdiction under CAFA, the home state controversy exception
16 applies. Under this exception, the Court must decline subject matter jurisdiction.

17 **C.    Prior Dismissal Orders**

18 At the OSC hearing, the Court probed the parties on whether, if the Court finds it
19 lacked subject matter jurisdiction from the inception of these cases, its prior dismissal
20 orders should be vacated. *See* Doc. Nos. 20, 42. Based on the current record, the Court
21 finds that dismissal of these orders is appropriate.

22 "[D]ismissals under Rule 12(b)(6) operate as judgments on the merits with claim-
23 preclusive effect, . . . ." *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th
24 Cir. 2017). However, where a court lacks subject matter jurisdiction, it may not reach the
25 merits of the case and cannot rule on a Rule 12(b)(6) motion because such a ruling would
26 be on the merits. *See Orff v. United States*, 358 F.3d 1137, 1149 (9th Cir. 2004)
27 (collecting cases); *see also Wages v. IRS*, 915 F.2d 1230, 1234 (9th Cir. 1990) ("a judge
28 who concludes that subject matter jurisdiction is lacking has no power to rule

1   alternatively on the merits of a case."); *id.* ("A judgment dismissing an action for failure
2   to state a claim is a judgment on the merits."). A judgment is void "where there is a 'total
3   want of jurisdiction' as opposed to an 'error in the exercise of jurisdiction.'" *NewGen,*
4   *LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016) (quoting *Watts v. Pinckney*, 752
5   F.2d 406, 409 (9th Cir. 1985)). A "total want of jurisdiction" exists, for example, when
6   the court issuing the judgment lacked jurisdiction over the general subject matter. *Watts*,
7   752 F.2d at 409. Where a court lacks subject matter jurisdiction, relief from a Rule
8   12(b)(6) dismissal order under Rule 60(b)(4) is appropriate. *See, e.g.*, *Woodard v. Wells*
9   *Fargo Bank, N.A.*, No. 5:14-cv-01017-ODW(SHx), 2014 U.S. Dist. LEXIS 144353, at *4
10  (C.D. Cal. Oct. 8, 2014) (citing *Wages*, 915 F.2d at 1234). Rule 60(b) provides that,
11  "[o]n motion and just terms," the Court may relieve a party from final judgment or order
12  if the judgment is void. Fed. R. Civ. P. 60(b)(4).

13  Here, the Court reached the merits of Plaintiff's claims in ruling on Sharp's two
14  Rule 12(b)(6) motions to dismiss. Doc. Nos. 20 ,42. In the absence of subject matter
15  jurisdiction, these rulings are void. Although neither party seeks relief from the dismissal
16  orders under Rule 60, the Court finds that *sua sponte* relief is warranted.

17  District courts have interpreted Ninth Circuit precedent as providing that a court
18  may vacate a judgment *sua sponte* pursuant to Rule 60(b), so long as the party that
19  obtained the judgment is first given notice and an opportunity to be heard, where the
20  court discovers that the judgment is void, *see Cason v. Cal. Check Cashing Stores*,
21  No. C-14-00630 JCS, 2014 U.S. Dist. LEXIS 48590, at *5 (N.D. Cal. Apr. 4, 2014)
22  (citing *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 352 (9th Cir.
23  1999)), or for any of the reasons set forth in Rule 60(b), *see Haar v. City of Mt. View*,
24  No. 10-CV-02995-LHK, 2012 U.S. Dist. LEXIS 164411, at *24 (N.D. Cal. Nov. 15,
25  2012); *see also St. John v. Kootenai Cty.*, No. 2:21-cv-00085-BLW, 2022 U.S. Dist.
26  LEXIS 97637, at *4 (D. Idaho May 31, 2022); *Mitchell v. City of Pittsburg*, No. C 09-
27  00794 SI, 2013 U.S. Dist. LEXIS 142919, at *4 (N.D. Cal. Oct. 1, 2013); *Lauren v.*
28  *Nellis*, No. 2:10-CV-01544-KJD-PAL, 2013 U.S. Dist. LEXIS 22006, at *4 (D. Nev. Feb.

19, 2013); *Swan View Coal. v. United States Forest Serv.*, 782 F. Supp. 2d 1132, 1143 (D. Mont. 2011).

The Court provided the parties with notice and an opportunity to be heard on this matter.  At the hearing, the parties agreed that in the absence of subject matter jurisdiction, vacatur of the dismissal orders is the correct result.  Accordingly, because the Court finds that it lacked subject matter jurisdiction and therefore that the dismissal orders are void, the Court *sua sponte* **VACATES** its dismissal orders.  *See* Doc. Nos. 20, 42.

## V. CONCLUSION

At bottom, the Court finds that Sharp improperly removed this action under the federal officer removal statute and that it must decline jurisdiction under CAFA, assuming the minimum requirements are met.  Plaintiffs agree that their cases should be remanded or dismissed, and Sharp has failed to demonstrate good cause to avoid this result.  Accordingly, the Court **ORDERS** as follows:

- The Court **UNCONSOLIDATES** the three individual actions of *Cousin v. Sharp Healthcare*, 22-cv-2040-MMA-DDL, *Camus v. Sharp Healthcare*, 23-cv-0033-MMA-DDL, and *Barbat v. Sharp Healthcare*, 23-cv-330-MMA-DDL;
- The Court's prior Dismissal Orders (Doc. Nos. 20, 42) are **VACATED**;
- The Court **REMANDS** the individual action of *Cousin v. Sharp Healthcare*, 22-cv-2040-MMA-DDL, originally filed in state court, Cal. Sup. Ct. Case No. 37-2022-00047290-CU-MC-CTL, for lack of subject matter jurisdiction;
- The Court **REMANDS** the individual action of *Camus v. Sharp Healthcare*, 23-cv-0033-MMA-DDL, originally filed in state court, Cal. Sup. Ct. Case No. 37-2022-00048546-CU-NP-CTL, for lack of subject matter jurisdiction; and
- The Court **DECLINES** to exercise subject matter jurisdiction over, and therefore **DISMISSES**, the individual action of *Barbat v. Sharp Healthcare*, 23-cv-330-MMA-DDL, pursuant to 28 U.S.C. § 1332(d)(4)(B) and without prejudice to filing this action in state court.

The Court **DIRECTS** the Clerk of Court to file this Order on the dockets of all three actions. The Clerk of Court is further instructed to return the Cousin and Camus Actions to the Superior Court of California, County of San Diego forthwith and close all three cases.

**IT IS SO ORDERED**.

Dated: March 18, 2024

*[signature]*

HON. MICHAEL M. ANELLO
United States District Judge